[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 428.]

THE STATE EX REL. COXSON ET AL., APPELLEES, *v.* DAIRY MART STORES OF
OHIO, INC., APPELLANT.

[Cite as *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.*,
2000-Ohio-188.]

*Workers' compensation—Termination of temporary total disability benefits—
Court of appeals' grant of writ of mandamus ordering Industrial
Commission to vacate its order refusing to reinstate temporary total
disability benefits to claimant and order to commission for further
consideration and a new order affirmed.*

(No. 99-532—Submitted August 22, 2000—Decided December 27, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD11-1473.

———————————

{¶ 1} In 1992, appellee-claimant, Marlyne Coxson, was an assistant manager for appellant Dairy Mart Stores of Ohio, Inc. ("DM"). On September 26, 1992, she was seriously hurt in a work-related motor vehicle accident. DM, a self-insured employer, began paying temporary total disability compensation ("TTC") thereafter.

{¶ 2} On October 12, 1993, claimant's attending physician, Dr. John F. Steele, certified her as temporarily totally disabled through early the next year. On December 7, 1993, DM's counsel deposed Dr. Steele. During the deposition, this exchange occurred:

"Q. [DM counsel]: And you've always responded that she was 100 percent totally disabled from her former position of employment. Are you now * * * retracting that statement to a degree?

"A [Doctor]: No, but if they would change her type of employment like a light-duty type thing, she could perform that. But for her regular job, she was 100 percent temporarily disabled."

{¶ 3} Dr. Steele authorized claimant's return to light-duty work, on the condition that she not be required to perform repetitive bending, stooping, or kneeling, or to lift over twenty-five pounds. He defined "repetitive" as "more than once every ten or so minutes."

{¶ 4} On December 15, 1993, DM sent this letter to claimant:

"GOOD NEWS! Your physician-of-record, Dr. John Steele has released you to return to work on a light-duty basis.

"Your restrictions are:

"1. no lifting over 25 lbs.

"2. no repetitive bending, stooping, or kneeling ('repetitive' is considered seven to eight times in an instance).

"3. Please call Ward Miller, your Human Resources Director, on or before, noon on Monday, December 27, 1993. He will assign you to a store.      * * *"

{¶ 5} A second letter was sent on January 11, 1994, that read:

"After being informed of your release to return to work on a light-duty basis, I have spoken with [your] Supervisor, Cindy Dunn, to locate a store to accommodate your return.

"Ms. Dunn has informed me that we have an opening at [a] store [in Hubbard, Ohio]. Please contact Ms. Dunn no later than Friday, January 14, 1994 to confirm your return to work at that location and to establish your work schedule. Ms. Dunn can be reached * * * at [phone number]. If she is not available when you call that store, please leave her a message with your phone number and she will contact you directly.

"Please contact me [Ward Miller] if you have any questions or if you have not been able to reach Ms. Dunn by January 14, 1994."

**{¶ 6}** The evidence conflicts as to whether claimant attempted to contact DM. In any event, on January 24, 1994, DM stopped paying TTC based on claimant's failure to report to her new position.

**{¶ 7}** On May 3, 1994, for reasons unknown, DM sent a one-line letter to claimant, which stated:

"Attached is a copy of the physical job demands for sales assistants and assistant managers under the Dairy Mart Rehabilitation program."

**{¶ 8}** Attached was a sheet entitled "PHYSICAL JOB DEMANDS FOR SALES ASSISTANTS REHABILITATION." It consisted of a list of job requirements, including:

"2. Required to lift boxes in the stockroom and to transfer them to the sales floor. The height would vary from ankle to shoulder level. * * *

"3. Occasional bending, kneeling preferred.

"4. Occasionally required to climb and stand on a ladder and safety stepstool to fix or replace window signs, to stock shelves, and to perform simple maintenance chores.

"5. Required to bend over to check in merchandise arriving from warehouse. Deliveries vary from once a week to once every two weeks.

"6. Perform various cleaning and scrubbing assignments.

" * * *

"8. Occasionally required to carry out trash and place in an outdoor dumpster. Maximum weight: no more than ten pounds.

"9. Required to sweep and mop the sales floor, required to lift, in addition to sweeping the parking lot, during appropriate weather.

" * * *

"12. [R]equired to wash windows and shine surfaces.

"13. DAIRY MART WILL WORK WITH THE PHYSICIAN TO MODIFY JOBS WITHIN GIVEN RESTRICTIONS OR LIMITATIONS."

**{¶ 9}** Claiming an inability to perform the duties offered, claimant petitioned the commission for an order reinstating TTC. She submitted C-84 physician's supplemental reports that ultimately certified her as temporarily totally disabled through July 25, 1995.

**{¶ 10}** A district hearing officer ("DHO") for appellee Industrial Commission of Ohio denied compensation, writing:

"[C]laimant's request for temporary total compensation from 1/28/94 through 4/17/95, inclusive, is denied as this request for payment of temporary total compensation was not submitted to the claim file within two years.

" * * *

"Temporary total compensation from 4/18/95 through 6/13/97, inclusive, is denied. The District Hearing Officer finds and orders that claimant has failed to submit any medical evidence to substantiate this requested period of disability.

"The District Hearing Officer notes that the latest C-84 report of Dr. Steele dated 8/11/94 estimated a return to work date of 11/30/94, and there are no subsequent C-84 reports contained within the State Claim file.

"Furthermore, the District Hearing Officer finds and orders that the self-insured employer made a legitimate good faith job offer to claimant on two occasions by certified letters dated 12/15/93 and 1/11/94. The District Hearing Officer further finds that claimant acknowledged receipt of the letters at hearing and understood the content of the letters.

"The District Hearing Officer notes that claimant disputed the existence of [a] light duty job at Dairy Mart based upon her experience there. However, the District Hearing Officer finds that no written evidence was presented to dispute the fact that this claimant was given a light duty job offer within her physical capabilities on or about 12/15/93 and 1/11/94. Accordingly, the District Hearing Officer finds that claimant failed to accept the legitimate light duty job offer and

4

temporary total compensation is denied for the requested period for the reasons set forth above."

{¶ 11} A staff hearing officer modified the DHO's order, finding:

"Claimant did request payment of temporary total compensation [from] 1/28/94 through 4/17/95, in a timely manner. Therefore, the Staff Hearing Officer concludes that the Industrial Commission of Ohio does have jurisdiction to consider authorization for payment of temporary total compensation for the above-stated period.

"The Staff Hearing Officer denies temporary total compensation from 1/28/94 through 4/17/95, for the reason that claimant refused a legitimate light duty offer of employment, on or about 12/15/93, then refused another offer on 1/11/94 and again on 5/3/94.

"In making this finding, the Staff Hearing Officer has relied upon claimant's testimony at this hearing, which establishes that claimant refused said offers as she 'thought there was no light duty work available' with this employer.

"This was also reflected in claimant's testimony as contained in the transcription of testimony from the District Hearing Officer hearing of 8/22/97.

"Finally, the Staff Hearing Officer relies upon Dr. Steele's testimony contained in his 12/7/93 Deposition, indicating claimant was capable of light duty work.

"Lastly, the employer's letters of 12/15/93, 1/11/94 and 5/3/94, offering claimant light duty work, were relied upon.

"Dr. Steele's other C-84 reports were reviewed but not found persuasive, in light of his opinion as contained in said Deposition.

"The prior order is affirmed in all other respects."

{¶ 12} Further hearing was denied.

{¶ 13} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in refusing to

reinstate TTC.  The court of appeals granted the writ and ordered the commission to vacate its order.  It reasoned that the commission order did not address what the court perceived to be DM's misstatement of Dr. Steele's restrictions, and thus ordered further consideration and a new order.

{¶ 14} This cause is now before this court upon an appeal as of right.

_____

*Podor & Associates, Kenneth C. Podor* and *Daniel J. Gibbons*, for appellee Coxson.

*Buckingham, Doolittle & Burroughs, Richard A. Hernandez, Timothy C. Campbell* and *Lori A. Fricke*, for appellant.

_____

***Per Curiam.***

{¶ 15} R.C. 4123.56(A) identifies four circumstances under which TTC can be terminated:

"In the case of a self-insuring employer, payments shall be for a duration based upon the medical reports of the attending physician.  If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer * * *.  Payments shall continue pending the determination of the matter, however payment shall not be made for the period [1] when any employee has returned to work, [2] when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, [3] when work within the physical capabilities of the employee is made available by the employer or another employer, or [4] when the employee has reached the maximum medical improvement."

{¶ 16} For reasons unknown, the parties concentrate on the second criterion, including a vigorous debate over whether a release that is not in writing can satisfy the statute.  The parties proceed, unquestionably, under the premise that

claimant was released to her former position of employment. This is not the case. Dr. Steele never released claimant to return to her former job. He said she could do light-duty work, and DM, in turn, offered claimant a job purportedly within those restrictions. Claimant's compensation was, therefore, stopped pursuant to the third criterion, not the second, rendering much of the litigants' discussion misplaced. The statute requires a written release only when the release is to the former position of employment.

{¶ 17} Eventually, the parties refocus their arguments on Dr. Steele's restrictions and whether the commission properly considered them in denying TTC from January 24 through July 24, 1995. Two reasons were stated for denial: (1) claimant's rejection of DM's job offer, and (2) lack of persuasive evidence of temporary total disability. The commission's analysis of both is flawed.

{¶ 18} In determining that DM's job was within claimant's medical capabilities, the DHO relied exclusively on DM's December 15, 1993 and January 14, 1994 letters. This is problematic for two reasons. First, since these letters do not identify the position offered or describe its duties, it is questionable whether they can be considered offers of suitable employment.

{¶ 19} Second, and even more important, the December letter, in acknowledging Dr. Steele's prohibition against repetitive bending, stooping and kneeling, defined "repetitive' as seven to eight times in an "instance" – an obviously subjective and highly ambiguous time frame. Thus, what DM considered to be non-repetitive could easily exceed Dr. Steele's limitation of six times per hour.

{¶ 20} The problem continues into the May 3, 1994 letter and job description. Its reference to "occasional" bending and kneeling is, again, too vague, and leaves the door open to duties that exceed Dr. Steele's restrictions.

{¶ 21} DM defends its offer by stressing that any deficiency is cured by the May 3, 1994 promise to "work with the physician to modify jobs within given restrictions or limitations." The difficulty with accepting this argument is that it

essentially legitimizes any job offer – no matter how inappropriate – under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop TTC, it must be clear that the job is indeed within claimant's restrictions.

{¶ 22} The court of appeals sought clarity in returning the cause to the commission for further consideration, and we agree with this ruling. Neither the DHO (who ignored the May 3, 1994 job description) nor the staff hearing officer (who mentioned it only in passing) addressed the two key questions posed by the job description: (1) What is DM's definition of "occasional" bending and kneeling? and (2) Does that definition comport with Dr. Steele's restrictions? As the court of appeals found, there are serious unanswered questions here.

{¶ 23} The second flaw in the commission's order is in its rejection of Steele's C-84s as unpersuasive. The commission based this conclusion on Dr. Steele's deposition testimony, presumably believing that he had repudiated his earlier C-84 declaration of an inability to return to the former position of employment. Dr. Steele, however, never testified that claimant could return to her former job. He said only that claimant could return to modified light duty, and actually reaffirmed that claimant could not resume her previous duties.

{¶ 24} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., concur in part and dissent in part.

———————————

**COOK, J., concurring in part and dissenting in part.**

{¶ 25} I agree with the majority's affirmance of the appellate court's decision, but with one modification. The commission's denial of TTC for the period beyond July 24, 1995, ought not be reconsidered. The commission denied TTC for that period not for lack of persuasive evidence, but for lack of any evidence of

8

temporary total disability.  That denial should remain intact, since Dr. Steele did not certify temporary total disability beyond July 24, 1995.  Accordingly, I would return this cause to the commission for reconsideration of the period of January 24, 1994 to July 24, 1995, only.

MOYER, C.J., concurs in the foregoing opinion.

———————————